391 So.2d 1371 (1980)
LESON CHEVROLET, INC.
v.
Donald TRAPP.
No. 11817.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1980.
Rehearing Denied January 19, 1981.
*1372 Stewart E. Niles, Jr. and Gary E. Meringer, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-appellant.
Nathan Greenberg, Gretna, Russell J. Schonekas, Bernhardt C. Heebe, New Orleans, for plaintiff-appellee.
Before BOUTALL, SCHOTT and CHEHARDY, JJ.
SCHOTT, Judge.
At a meeting of the board of directors of Leson Chevrolet Company, Inc., plaintiff, held on November 19, 1979, defendant, Donald Trapp, was removed from office as plaintiff's president and executive officer. On December 4 this suit was filed by plaintiff seeking injunctive relief against defendant from acting or attempting to act as president and chief executive officer of the corporation, appearing at the corporation's premises in Harvey, Louisiana, interfering with the operation of the business or annoying or harassing the employees of the business. From the judgments granting preliminary and permanent injunctions defendant has appealed. The issues are whether his removal as president and chief executive officer was lawful and whether it was proper for the court to grant an injunction which, according to defendant, prevents him from discharging his duties as a member of plaintiff's board of directors.
The meeting of November 19, 1979, was attended by Sidonia Leson Trapp, Sheila Trapp Boudreaux, Lillian L. Leson, Roberta Leson, Heinke E. Trapp and defendant. The vote on the removal of defendant from office was five to one with defendant casting the dissenting vote. Defendant contests the legality of this vote because Heinke E. Trapp and Lillian and Roberta Leson were not shareholders and were therefore ineligible to serve as directors under the following provisions of the corporation charter:
"All of the corporate powers and authority of this corporation shall be vested in and exercised by a board of directors composing of not less than three nor more than six shareholders ...."
Conceding that the three directors were not shareholders at the time of the meeting plaintiff points out that they were previously shareholders and relies on another provision of the charter which provides that directors in office shall continue in the exercise of their duties until their successors have been elected. We see no need to address this issue since the vote on the removal of defendant from office was carried by a vote of two to one disregarding the three questioned directors.
Defendant argues, however, that the mere presence at and participation in the meeting by the questioned directors had the effect of nullifying the votes of the remaining *1373 directors because their votes were improperly influenced by the presence of the other three. We consider this pure speculation which is contradicted by the fact that the affidavit verifying the petition in this case was signed by Sidonia Leson Trapp and Sheila Trapp Boudreaux who constituted the two to one majority and whose legal standing is not questioned. In any event, defendant has provided no legal authority for his position that majority votes of directors whose authority is unquestioned must be disregarded because they were joined in the vote by directors who are ineligible to serve on the board.
Much of the evidence taken at the trial concerned the performance of defendant's duties as president prior to his removal. Considering that LSA R.S. 12:82 authorizes the board of directors to remove an officer with or without cause, this evidence was irrelevant. Defendant's removal as president and chief executive officer was legally effective and thereafter he was only a director and a shareholder.
The more important issue in the case is whether the injunction prohibiting defendant from being on plaintiff's premises is lawful considering that it interferes with the performance of defendant's duties as a director.
LSA R.S. 12:81 provides:
"A. Subject to the provisions of the articles, the bylaws or this Chapter, all the corporate powers shall be vested in, and the business and affairs of the corporation shall be managed by, a board of directors of not less than three natural persons ....."
This is practically identical to the provisions of plaintiff's charter which we quoted earlier in this opinion.
Once the directors are chosen by the shareholders their power to manage the corporation is plenary and the powers of the officers and agents of the corporation are delegated to them by the board. See Cyclopedia of the Law of Private Corporations, Fletcher § 505 et seq.; 19 Am.Jur.2d § 1145 et seq. However, the board's authority is collegial and does not belong to each individual member of the board. On the other hand, individual board members have potential liability such as that provided for in R.S. 12:91 et seq. and R.S. 23:1032 as interpreted by this court in Bazley v. Tortorich, 380 So.2d 727 (La.App. 4th Cir. 1980), writs granted, 383 So.2d 1263. The question is whether this potential individual liability is such that defendant, as a matter of law, cannot be enjoined from visiting the premises of the corporation of which he is a director under the special circumstances of this case. These circumstances are best understood from the testimony of Jim A. Griffin who was appointed plaintiff's general manager in place of defendant following the meeting of November 19.
Griffin's testimony was as follows: After the November 19 meeting defendant simply continued to operate the dealership and to give directions to Griffin and the other employees as though he had not been terminated. If defendant were to return to the premises in any capacity, as president or otherwise, Griffin would leave the company as would the sales manager and the service manager. This is so because defendant's previous position as president, the good relationship Griffin had with defendant in the past and the fact that defendant remains the largest shareholder would cause defendant to exert influence on the employees and would likewise lead Griffin and the employees to be influenced by him. Griffin stated:
"There's no personalities involved on my part. I want that clearly understood. I think the world of the whole family as a whole. My job is to operate Leson Chevrolet, which I'm doing, and I think I've done a good job on it in what I've done and what I'm doing now. But, it goes back to common sense. I cannot serve two masters. You or no one else can. It would be that way."
R.S. 12:82 and the charter of plaintiff provide for the selection of officers such as president, chief executive officer and general manager. If the corporation is to function smoothly these officers must be permitted to perform their duties without interference from individual members of the board once they have been selected by the board as a whole. The evidence is convincing that the corporation is functioning *1374 smoothly under Sidonia Leson Trapp as president, Heinke Trapp as chief executive officer, and Jim Griffin as general manager, and that the operation will be severely disrupted simply because of Donald Trapp's presence on the premises at this time. We have concluded that the injunction against the defendant was properly fashioned after balancing the remote possibility of liability on the part of defendant against the real and present threat to the corporation by his being on the premises. It is significant that the injunction itself is tempered by a reservation to defendant of his right to move to amend that the injunction be changed when circumstances warrant such.
Defendant argues that we should follow the Alabama Supreme Court's position in Johnston v. Livingston Nursing Home, Inc., 211 So.2d 151 (1968) in which the court set aside an injunction against a director from entering upon the premises of a corporation under similar circumstances. The court recognized that appellant had made herself obnoxious when she came on the premises and was guilty of meddlesome acts, but concluded that her visiting the premises was required in the performance of her duties as a director. We do not reach the same result based on the circumstances of this case. We note an important distinction in the fact that Mrs. Johnston remained the president as well as a director of the corporation, whereas defendant has been removed as president and his recent occupancy of that office is the primary reason for keeping him away from the premises at this time.
We have considered whether injunctive relief was in order considering that plaintiff's shareholders have the authority under the law to remove Donald Trapp as a director and thereby solve the problem for plaintiff. However, this is complicated by the fact that the corporation consists of three shareholders so that there must be a minimum of three directors under R.S. 12:81, and the charter of the corporation requires that directors be shareholders. Thus, amendment to the corporation charter would be required in order to make someone other than the three shareholders eligible to serve as a director. The exigencies of the situation required that some action be taken immediately and, surely, before the delay which would be occasioned by a shareholders meeting not merely to elect a director in place of defendant but to amend the charter as a prerequisite to the election.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.